O

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

LASHONDRA R. RICHARDSON,          )     NO. CV 10-04186-MAN
                                  )
              Plaintiff,          )
                                  )     MEMORANDUM OPINION
         v.                       )
                                  )     AND ORDER
MICHAEL J. ASTRUE,                )
Commissioner of Social Security,  )
                                  )
              Defendant.          )
_____)

     Plaintiff filed a Complaint on June 10, 2010, seeking review of the
denial of plaintiff's application for supplemental security income
("SSI"). On July 22, 2010, the parties consented, pursuant to 28 U.S.C.
§ 636(c), to proceed before the undersigned United States Magistrate
Judge. The parties filed a Joint Stipulation on February 24, 2011, in
which: plaintiff seeks an order reversing the Commissioner's decision
and awarding benefits or, alternatively, remanding for further
administrative proceedings; and the Commissioner requests that his
decision be affirmed or, alternatively, remanded for further
administrative proceedings. The Court has taken the parties' Joint
Stipulation under submission without oral argument.

///

## SUMMARY OF ADMINISTRATIVE PROCEEDINGS

On August 14, 2006, plaintiff filed an application for SSI. (Administrative Record ("A.R.") 9.) Plaintiff, who was born on August 9, 1988 (A.R. 13),[1] claims to have been disabled since March 7, 2005 (A.R. 9), due to lupus (A.R. 41, 64).

After the Commissioner denied plaintiff's claim (A.R. 41-45), plaintiff requested a hearing (A.R. 46). On March 11, 2008, plaintiff, who was not represented by counsel, appeared and testified at a hearing before Administrative Law Judge London L. Steverson ("ALJ Steverson"). (A.R. 20-39.) At the hearing, plaintiff's mother, Linda Richardson, also testified. On March 28, 2008, ALJ Steverson denied plaintiff's claim (A.R. 9-14), and the Appeals Council subsequently denied plaintiff's request for review of ALJ Steverson's decision (A.R. 1-5). That decision is now at issue in this action.

## SUMMARY OF ADMINISTRATIVE DECISION

ALJ Steverson found that plaintiff has not engaged in substantial gainful activity during the period at issue. (A.R. 11.) ALJ Steverson determined that plaintiff has "hypertension and systemic lupus erythematosus." (*Id.*) He also determined that plaintiff does not have an impairment or a combination of impairments that meets or equals one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1

---

[1]      On the date the application was filed, plaintiff was 18 years old, which is defined as a younger individual. (A.R. 13; *citing* 20 C.F.R. § 416.963.)

2

1   (20 C.F.R. §§ 416.920(d), 416.925, 416.926).  (*Id.*)

2

3       After reviewing the record, ALJ Steverson determined that plaintiff

4   has the residual functional capacity ("RFC") to perform light work.

5   (A.R. 11.)  He noted that plaintiff worked as a "courtesy clerk/box

6   person at a grocery store from August 2005 to April 2006" –– a job which

7   "appears to have involved light, unskilled work activities." (A.R. 13.)

8   However, according to a summary earnings query, plaintiff's wages were

9   "minimal." (*Id.*)  Accordingly, he "decline[d] to make a finding that

10  plaintiff is not disabled because she is able to engage in past relevant

11  work." (*Id.*)

12

13      ALJ Steverson determined that "[t]ransferability of job skills is

14  not an issue because [plaintiff] does not have past relevant work."

15  (A.R. 13.)  However, having considered plaintiff's age, education, work

16  experience, and RFC in connection with the Medical-Vocational

17  Guidelines, he found that jobs exist in significant numbers in the

18  national economy that plaintiff can perform.  (A.R. 13-14.)

19  Accordingly, he concluded that plaintiff has not been under a

20  disability, as defined in the Social Security Act, "at any time through

21  the date of [his] decision." (A.R. 14.)

22

23                          **STANDARD OF REVIEW**

24

25      Under 42 U.S.C. § 405(g), this Court reviews the Commissioner's

26  decision to determine whether it is free from legal error and supported

27  by substantial evidence in the record as a whole.  <u>Orn v. Astrue</u>, 495

28  F.3d 625, 630 (9th Cir. 2007).  Substantial evidence is "'such relevant

                                      3

evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Id.* (citation omitted).  The "evidence must be more than a mere scintilla but not necessarily a preponderance." <u>Connett v. Barnhart</u>, 340 F.3d 871, 873 (9th Cir. 2003).  "While inferences from the record can constitute substantial evidence, only those 'reasonably drawn from the record' will suffice." <u>Widmark v. Barnhart</u>, 454 F.3d 1063, 1066 (9th Cir. 2006)(citation omitted).

Although this Court cannot substitute its discretion for that of the Commissioner, the Court nonetheless must review the record as a whole, "weighing both the evidence that supports and the evidence that detracts from the [Commissioner's] conclusion." <u>Desrosiers v. Sec'y of Health and Hum. Servs.</u>, 846 F.2d 573, 576 (9th Cir. 1988); *see also* <u>Jones v. Heckler</u>, 760 F.2d 993, 995 (9th Cir. 1985).  "The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and for resolving ambiguities." <u>Andrews v. Shalala</u>, 53 F.3d 1035, 1039 (9th Cir. 1995).

The Court will uphold the Commissioner's decision when the evidence is susceptible to more than one rational interpretation.  <u>Burch v. Barnhart</u>, 400 F.3d 676, 679 (9th Cir. 2005).  However, the Court may review only the reasons stated by the ALJ in his or her decision "and may not affirm the ALJ on a ground upon which he [or she] did not rely." <u>Orn</u>, 495 F.3d at 630; *see also* <u>Connett</u>, 340 F.3d at 874.  The Court will not reverse the Commissioner's decision if it is based on harmless error, which exists only when it is "clear from the record that an ALJ's error was 'inconsequential to the ultimate nondisability determination.'" <u>Robbins v. Soc. Sec. Admin.</u>, 466 F.3d 880, 885 (9th

1   Cir. 2006)(*quoting* <u>Stout v. Comm'r</u>, 454 F.3d 1050, 1055 (9th Cir.

2   2006)); *see also* <u>Burch</u>, 400 F.3d at 679.

3

4                                **DISCUSSION**

5

6       Plaintiff makes the following claims: (1) ALJ Steverson lacked the

7   candor "to judge credibility and make impartial decisions," and

8   therefore, the Court should reverse and remand for a *de novo* hearing

9   before an impartial and candid administrative law judge ("ALJ"); and (2)

10  ALJ Steverson improperly assessed plaintiff's RFC. (Joint Stipulation

11  ("Joint Stip.") at 4-6, 8-12, 20-22.)

12

13  **I.   Plaintiff Has Failed To Meet Her Burden Of Establishing A**

14       **Disqualifying Interest.**

15

16      Plaintiff claims that the Court should remand this case for a *de

17  novo* hearing before an impartial and candid ALJ. (Joint Stip. at 4-6.)

18  Specifically, plaintiff claims that, because ALJ Steverson has been

19  found to lack candor, plaintiff cannot have confidence that he was

20  truthful "in judging credibility and in issuing decisions." (*Id.* at 5.)

21

22      There is a general presumption that administrative adjudicators,

23  such as an ALJ, are unbiased and exercise their decision-making

24  authority with honesty and integrity. *See* <u>Schweiker v. McClure</u>, 456

25  U.S. 188, 195-96, 102 S. Ct. 1665 (1982); <u>Withrow v. Larkin</u>, 421 U.S.

26  35, 47, 95 S. Ct. 1456 (1975); <u>Rollins v. Massanari</u>, 261 F.3d 853, 857

27  (9th Cir. 2001). To rebut this presumption, plaintiff must show "a

28  conflict of interest or some other specific reason for

                                    5

disqualification." *Id.* at 857-58.  In other words, plaintiff must establish that "the ALJ's behavior, *in the context of the whole case*, was so extreme as to display clear inability to render fair judgment." *Id.* at 858 (internal punctuation omitted; emphasis added).

In this case, plaintiff has failed to meet her heavy burden.  While it is true that ALJ Steverson was found, *inter alia*, to lack candor in connection with an investigation into his personal use of his official title, agency letterhead, and agency equipment, and ultimately was removed from his ALJ position,[2] plaintiff has failed to point to *any* evidence that he lacked candor or otherwise demonstrated bias, prejudice, or any other disqualifying interest in her case.  In other words, plaintiff has not established that ALJ Steverson's behavior *in the context of her case* displayed a clear inability to render fair judgment.  Notwithstanding plaintiff's failure to meet her burden, however, the Court, for the reasons set forth below, is remanding this case, and because ALJ Steverson has been removed from his position as an ALJ, this case will be remanded to another ALJ.

**II.   ALJ Steverson Failed To Give Specific And Legitimate Reasons Supported By Substantial Evidence For Rejecting The Opinions Of Plaintiff's Treating Doctors, And Therefore, Plaintiff's Credibility And RFC Assessment Need To Be Revisited On Remand**.

Plaintiff claims that ALJ Steverson improperly assessed her RFC. In making this claim, plaintiff raises two additional claims:  (1) ALJ

---

[2] *See* SSA v. Steverson, 2009 M.S.P.B. 143, 111 M.S.P.R. 649 (July 27, 2009).

Steverson improperly rejected the opinions of her treating doctors; and (2) ALJ Steverson failed to provide clear and convincing reasons for finding her to be not credible.   For the reasons set forth below, however, the Court cannot determine whether ALJ Steverson appropriately assessed plaintiff's RFC or credibility, because ALJ Steverson failed to give specific and legitimate reasons for rejecting the opinions of plaintiff's treating doctors.

It is the responsibility of the ALJ to analyze evidence and resolve conflicts in medical testimony.  Magallanes v. Bowen, 881 F.2d 747, 750 (9th Cir. 1989).   In the hierarchy of physician opinions considered in assessing a social security claim, "[g]enerally, a treating physician's opinion carries more weight than an examining physician's, and an examining physician's opinion carries more weight than a reviewing physician's."   Holohan v. Massanari, 246 F.3d 1195, 1202 (9th Cir. 2001); see also 20 C.F.R. § 416.927(d).

The opinions of treating physicians are entitled to the greatest weight, because the treating physician is hired to cure and has a better opportunity to observe the claimant.  Magallanes, 881 F.2d at 751.  When a treating physician's opinion is not contradicted by another physician, it may be rejected only for "clear and convincing" reasons.  Lester v. Chater, 81 F.3d 821, 830 (9th Cir. 1995)(as amended).  When contradicted by another doctor, a treating physician's opinion may only be rejected if the ALJ provides "specific and legitimate" reasons supported by substantial evidence in the record.  Id.  It is well established that "[w]hen a treating physician's opinion is contradicted . . . , the ALJ must assess its persuasiveness in light of specified factors, including

7

the 'length of the treatment relationship and the frequency of examination;' the 'nature and extent of the treatment relationship;' and the treating opinion's consistency 'with the record as a whole.'" Aranda v. Comm'r SSA, 405 Fed. Appx. 139, 141 (9th Cir. 2010)(*quoting* Orn, 495 F.3d at 631).

"The opinion of a nonexamining physician cannot by itself constitute substantial evidence that justifies the rejection of the opinion of . . . a treating physician." Lester, 81 F.3d at 831; *see also* Pitzer v. Sullivan, 908 F.2d 502, 506 n.4 (9th Cir. 1990)(finding that the nonexamining physician's opinion "with nothing more" did not constitute substantial evidence). However, "[w]here the opinion of the claimant's treating physician is contradicted, and the opinion of a nontreating source is based on independent clinical findings that differ from those of the treating physician, the opinion of the nontreating source may itself be substantial evidence." Andrews, 53 F.3d at 1041. Independent clinical findings include "(1) diagnoses that differ from those offered by another physician and that are supported by substantial evidence, or (2) findings based on objective medical tests that the treating physician has not herself considered." Orn, 495 F.3d at 632 (internal citations omitted).

A.   Nontreating Physicians

On October 3, 2006, plaintiff was seen by Rocely Ella-Tamayo, M.D., a board eligible internist, for a complete internal medicine evaluation. (A.R. 139-43.)   Dr. Tamayo diagnosed plaintiff with lupus and hypertension.   (A.R. 143.)   In pertinent part, Dr. Tamayo assessed

8

plaintiff's functional capacity as follows:

> [plaintiff] is restricted in pushing, pulling, lifting, and
> carrying to about 20 pounds occasionally, and about 10 pounds
> frequently because of her lupus condition.   Sitting is
> unrestricted.  In terms of standing and walking [plaintiff] is
> able to stand and walk 6 hours out of an 8-hour workday with
> normal breaks.  She is able to kneel and squat occasionally.
> There is no functional impairment observed on both hands.

(*Id.*)

On October 16, 2006, based upon a review of Dr. Tamayo's evaluation and plaintiff's other medical records from 2006, state agency reviewing physician M. E. Bayer, M.D., diagnosed plaintiff with systemic lupus erythmatosus and hypertension.  Dr. Bayer opined that plaintiff could: lift and/or carry 20 pounds occasionally and 10 pounds frequently; sit, stand, and/or walk six hours in an eight-hour workday; and could push/pull without limitation.  (A.R. 152.)  Dr. Bayer noted that there were no established postural, manipulative, visual, communicative, and/or environmental limitations.  (A.R. 153-55.)

B.   Treating Physicians

On August 31, 2006, plaintiff's treating physician Amy Starr, M.D., a pediatric rheumatalogist, completed a musculoskeletal evaluation of plaintiff.  (A.R. 98-100.)  In her evaluation, Dr. Starr indicated that plaintiff has been diagnosed with systemic lupus and her symptoms began

in January 2005.[3] (A.R. 98.) Dr. Starr further indicated that, while plaintiff has a "full range of motion today," plaintiff has had occasional swelling/effusion in her hands and right shoulder.[4] (*Id.*) Although Dr. Starr did not note any other limitations and/or abnormalities, she did note that plaintiff has "less stamina but can walk 1-2 blocks." (A.R. 99.) She also noted that plaintiff has a "lifelong disease" with a "high risk of relapse [and] renal failure." (A.R. 100.)

In a November 9, 2006 progress note, Dr. Starr noted that, since plaintiff's last appointment, plaintiff reported having aches in her knees, ankles, hands, and joints, but no real swelling. (A.R. 234.) A physical examination of plaintiff was normal, and plaintiff was assessed with stable systemic lupus. (A.R. 235-36.) In a January 24, 2007 progress note, Dr. Starr noted plaintiff's reports of, *inter alia*, "[l]eft knee grinding in cold weather, aching in knees, hands and elbows," and "[s]ome feet swelling [and] hand swelling." (A.R. 231.) Dr. Starr's physical examination of plaintiff was normal, and plaintiff was again assessed as having stable systemic lupus. (A.R. 232.)

---

[3]   Dr. Starr also indicated that plaintiff "has had arthritis, cytopenia, renal disease, mouth ulcers, pleuritis[, and] pericarditis." (A.R. 100.)

[4]   Dr. Starr's prior treatment notes are consistent with her assessment that plaintiff suffers from occasional swelling/effusion. (A.R. 108 (10/18/05 - hands and feet swelling; elbows and knees hurting; "knees worse in [the morning]"; joints - normal); A.R. 107 (12/28/05 - "less joint swelling [and] pain"; joints - normal); A.R. 106 (02/27/06 - "Hands swelling x 1-2 days"; "knees swell on [and] off"; joints - normal, including hands and knees); A.R. 105 (03/29/06 - "foot swelling less"; "lip [and] hands swollen"; "swelling dorsum of both hands plus lips"); A.R. 104 (04/20/06 - "swelling + rash"; joints - normal); A.R. 103 (06/26/06 - joint pain and swelling; morning stiffness for 1-2 hours).)

10

In addition, in an April 23, 2007 follow-up examination, Dr. Starr noted that plaintiff had swelling in her feet and hands a week before the examination as well as aches in her knees.  (A.R. 226.)   Dr. Starr noted that plaintiff's systemic lupus was stable, but her arthritis medication needed to be increased.  Dr. Starr noted that she was transferring treatment of plaintiff to Dr. Gerald Dale Levy, M.D., an adult rheumatologist.  Before transferring plaintiff to Dr. Levy, however, Dr. Starr noted in her April 26, and April 30, 2007 addended treatment notes that plaintiff's "lab tests are worsening." (A.R. 228.) Accordingly, Dr. Starr increased plaintiff's medications and noted that plaintiff would need to schedule a rheumatology appointment in one month and "may need [a] nephrology consult and renal biopsy."  (*Id.*)

On May 8, 2007, plaintiff was seen by Dr. Levy.  (A.R. 209-11.) Dr. Levy indicated that plaintiff has had systemic lupus erthmatosis for two years.  (A.R. 209.)  Dr. Levy further indicated that plaintiff had a flare up two weeks ago and is "doing a little better . . . with a change in med[ication]s."  (*Id.*)   Dr. Levy conducted a physical examination of plaintiff, which revealed normal findings except for tenderness in her hips.  (A.R. 210-11.)  Dr. Levy also noted that plaintiff has mild proteinuria.  (A.R. 211.)

On July 3, August 21, and October 16, 2007, plaintiff was again seen by Dr. Levy.  On all three occasions Dr. Levy reviewed plaintiff's lab work and assessed her as having systemic lupus erythematosus.  (A.R. 158-59, 177-78, 188-90.) On July 3, 2007, Dr. Levy prescribed Cellcept for plaintiff; he later noted that Cellcept was prescribed to treat plaintiff's continued lupus activity.  In his August 21, 2007 treatment

note, Dr. Levy indicated that plaintiff "feels better" and is "less stiff." He noted, however, that plaintiff has a "'knot' medial aspect [in her] left wrist," a "dry patch [on her] left deltoid," and acne on her face. (A.R. 177.) In his October 16, 2007 examination, Dr. Levy noted that plaintiff has "a rash over her left upper arm that has increased in size." (A.R. 159.)

In a letter January 28, 2008, Dr. Levy detailed his treatment of plaintiff. (A.R. 245-46.) In pertinent part, he noted that plaintiff has had "systemic lupus erythmatosus for 2 years with active disease, requiring aggressive medications."[5] (A.R. 245.) Dr. Levy also noted that, beginning on July 3, 2007, plaintiff "was started on Cellcept [myophelelate] due to continued Lupus activity." (A.R. 246.) Dr Levy stated that when plaintiff "was last seen on January 21, 2008, . . . she remain[ed] with active disease. [Her medications of] Cellcept, Methotrexate and [P]laquenil are all necessary to prevent further deterioration of her condition." (*Id.*) Significantly, Dr. Levy noted that "[b]ecause of continued fatigue, joint aches[,] and [plaintiff's] medication regimen[,] regular activities of daily living [are] quite difficult [for plaintiff]." (*Id.*)

Similarly, in a February 28, 2008 letter, Dr. Starr detailed her treatment of plaintiff. (A.R. 250.) Dr. Starr noted that plaintiff was under her care from March 2005, until April 2007, for "severe systemic lupus erthematosus." (*Id.*) She noted that plaintiff had "severe renal disease," "developed cardiomegaly," and "developed arthritis in

---

    [5]   Dr. Levy indicated that plaintiff has been taking Prednisone, Plaquenil, Feldene, Methotrexate, and Lisinopril. (A.R. 245.)

Oct[ober] 2005." (*Id.*) Dr. Starr further indicated that, at the time of plaintiff's last visit, she "had very active disease including severe renal disease with proteinuria, hematuria and casts in the urine, low complement levels, elevated antiDNA levels and elevated inflammatory markers." (*Id.*) Dr. Starr noted that plaintiff "has a very high risk of progressive renal failure over the next 10 years." (*Id.*) Significantly, Dr. Starr also noted that plaintiff "may also be limited by her arthritis and *cannot do any work that requires lifting or standing for long periods of time*." (*Id.;* emphasis added.)

C.   <u>Analysis</u>

In his decision, ALJ Steverson gives controlling weight to the opinion of state agency reviewing physician Dr. Bayer. In so doing, ALJ Steverson expressly rejects the opinions of Drs. Starr and Levy, plaintiff's treating doctors, "to the extent they suggest that [plaintiff] has been unable to perform light exertional activities for twelve months," because: (1) "progress notes through the middle of April 2007 suggest that [plaintiff's] lupus was fairly stable with medications"; (2) "although [plaintiff] appears to have some deterioration toward the end of April 2007, her medical condition appears to have improved after the middle of 2007"; and (3) their opinions are "contradicted by the findings of a consultative examiner and a State Agency medical consultant, who indicated that [plaintiff] retained the ability to perform light exertional activities." (A.R. 11.)

ALJ Steverson's first two reasons for rejecting the opinions of

13

plaintiff's treating doctors are unpersuasive.  In his decision, ALJ
Steverson rejects the opinions of plaintiff's treating doctors, because,
despite a period of deterioration in 2007, plaintiff's condition
remained "fairly stable" and/or improved.  As plaintiff properly
contends, however, ALJ Steverson appears to improperly equate stability
with functionality. (Joint Stip. at 10.)  While plaintiff's treating
doctors note that plaintiff's lupus is stable, both doctors indicate
that plaintiff has an active disease which requires aggressive
medications.  Significantly, Dr. Levy opined that, "because of
[plaintiff's] continued fatigue, joint aches[,] and medication regime[,]
regular activities of daily living are quite difficult [for plaintiff]."
(A.R. 246.)  Similarly, Dr. Starr opined that plaintiff "cannot do any
work that requires lifting or standing for long period of time" and "may
also be limited by her arthritis."  (A.R. 250.)  In other words,
notwithstanding the stability of plaintiff's lupus, plaintiff's doctors
opine that plaintiff will have functional limitations as a result of her
lupus, medication regimen, and, possibly, her arthritis.  Further, to
the extent ALJ Steverson rejects the opinions of plaintiff's treating
doctors because plaintiff's condition has improved after the middle of
2007, ALJ Steverson's contention is belied by Dr. Levy's initial July
2007 prescription of Cellcept to treat plaintiff's "continued Lupus
activity" and his ongoing prescription of Cellcept and other medications
to prevent further deterioration of plaintiff's condition.  As such, ALJ
Steverson's reasoning cannot constitute a legitimate reason for
rejecting the opinions of plaintiff's treating doctors.

      ALJ Steverson's other reason for rejecting the opinions of
plaintiff's treating doctors -- *to wit*, that their opinions are

14

contradicted by the nontreating sources -- is also unavailing.  As an initial matter, the opinions of Drs. Tamayo and Bayer, the nontreating physicians, pre-date all of Dr. Levy's treatment notes and testing, as well as some of Dr. Starr's treatment notes and testing.  Significantly, the opinions of Drs. Tamayo and Bayer do not account for plaintiff's period of deterioration or her medication regimen -- a regimen which Dr. Levy opined would contribute to plaintiff's difficulties in completing daily activities.  Accordingly, because the opinions of Drs. Tamayo and Bayer are not based on a complete review of the medical record, it is unclear whether their opinions, in fact, contradict the opinions of plaintiff's treating doctors or, instead, reflect plaintiff's abilities at an earlier period of time.  Further, even assuming *arguendo* that the opinion of Dr. Bayer -- the nontreating, nonexamining physician to whom the ALJ gives controlling weight -- contradicts the opinions of Drs. Starr and Levy, that fact, alone, cannot constitute substantial evidence which justifies the rejection of the opinions of plaintiff's treating physicians.  Lester, 81 F.3d at 831.  As such, ALJ Steverson's reasoning cannot constitute a specific and legitimate reason for rejecting the opinions of plaintiff's treating doctors.

Therefore, for the aforementioned reasons, ALJ Steverson erred by failing to give specific and legitimate reasons for rejecting the opinions of Drs. Starr and Levy regarding plaintiff's limitations and restrictions.  On remand, the opinions of Drs. Levy and Starr should be considered properly, and should the ALJ elect to give them no weight and instead to give controlling weight to the opinion of a nonexamining state agency physician, the ALJ should set forth specific and legitimate reasons for so doing.  After so doing, the ALJ should consider what

impact, if any, this has on the assessments of plaintiff's RFC and credibility.[6]

---

[6]     In finding plaintiff to be not entirely credible, ALJ Steverson stated that "the objective medical evidence does not document medical findings consistent with the extreme limitation alleged by [plaintiff] and her mother." (A.R. 13.)  By way of example, ALJ Steverson notes that plaintiff's "lupus has been reported to be stable without signs of swelling, pain, or restricted motion," and "progress notes do not document persistent gait abnormalities that would require on-going use of a cane." (*Id.*)  ALJ Steverson further notes that plaintiff's alleged limitations in daily activities "cannot be objectively verified with any reasonable degree of certainty," and, even if they could, "it is difficult to attribute that degree of limitation to [plaintiff]'s medical condition, as opposed to other reasons, in view of the relatively weak medical evidence and other factors discussed in this decision." (*Id.*)

    As an initial matter, the failure of the medical evidence to support the extent of plaintiff's subjective symptoms cannot, by itself, constitute a clear and convincing reason for discrediting plaintiff's testimony. *See* <u>Varney v. Secretary</u>, 846 F.2d 581, 584 (9th Cir. 1988); *see also*, <u>Bunnell v. Sullivan</u>, 947 F.2d 341, 347 (9th Cir. 1991)(noting that "[i]f an adjudicator could reject a claim of disability simply because [plaintiff] fails to produce evidence supporting the severity of the pain there would be no reason for an adjudicator to consider anything other than medical findings").  Accordingly, ALJ Steverson's finding that the objective evidence does not support the extent and/or degree of plaintiff's alleged limitations in daily living cannot, by itself, constitute a clear and convincing reason for discrediting plaintiff's testimony.

    To the extent ALJ Steverson discredits plaintiff because her lupus has been reported as "stable," ALJ Steverson's reasoning is unpersuasive, because, as discussed in detail *supra*, he appears to conflate stability with functionality.  In addition, contrary to ALJ Steverson's contention, plaintiff's treating notes *do* contain reports of swelling, pain, and restricted motion.  Further, to the extent ALJ Steverson discredits plaintiff because her "progress notes do not document persistent gait abnormalities that would require on-going use of a cane," ALJ Steverson's reasoning is unavailing.  The record indicates that "sometimes [plaintiff's] knees ache and [she] need[s] to use a cane." (A.R. 64.)  Plaintiff does not allege that she has persistent gait abnormalities, and therefore, the fact that the record does not contain such reports cannot constitute a clear and convincing reason for rejecting plaintiff's testimony.

    ALJ Steverson's last ground for discrediting plaintiff -- *to wit*, that in view of the "relatively weak medical record," it is difficult to "attribute [plaintiff's alleged] degree of limitation to her medical condition, as opposed to other reasons" -- is also not clear and convincing.  The record contains opinions from plaintiff's treating doctors, both specialists in the field of rheumatology, who opine that

16

1    **III. <u>Remand Is Required</u>.**

2

3         The decision whether to remand for further proceedings or order an

4    immediate award of benefits is within the district court's discretion.

5    <u>Harman v. Apfel</u>, 211 F.3d 1172, 1175-78 (9th Cir. 2000).   Where no

6    useful purpose would be served by further administrative proceedings, or

7    where the record has been fully developed, it is appropriate to exercise

8    this discretion to direct an immediate award of benefits.  *Id.* at 1179

9    ("[T]he decision of whether to remand for further proceedings turns upon

10   the likely utility of such proceedings.").   However, where there are

11   outstanding issues that must be resolved before a determination of

12   disability can be made, and it is not clear from the record that the ALJ

13   would be required to find the claimant disabled if all the evidence were

14   properly evaluated, remand is appropriate.  *Id.* at 1179-81.

15

16        Remand is the appropriate remedy to allow the ALJ the opportunity

17   to remedy the above-mentioned deficiencies and errors.[7]  *See, e.g.,*

18   <u>Benecke v. Barnhart</u>, 379 F.3d 587, 593 (9th Cir. 2004)(remand for

19

20   plaintiff's medical conditions result in limitations in her daily
     activities.  The ALJ needs to consider these opinions properly and, to
21   the extent the ALJ finds the record to be deficient, the record should
     be developed further.

22        [7]    Plaintiff has requested that this Court "credit the testimony
23   of [plaintiff] as well as the opinions of Dr. Levy and Dr. Starr."
     (Joint Stip. at 12.)  However, because there are outstanding issues that
24   need to be resolved before a proper disability determination can be
     made, and it is unclear whether the evidence, if credited as true, would
25   require a finding of disability, the Court declines to credit the
     testimony of plaintiff and the opinions of plaintiff's treating doctors
26   as true.  <u>Vasquez v. Astrue</u>, 547 F.3d 1101, 1106 (9th Cir. 2008); *see*
     <u>Smolen v. Chater</u>, 80 F.3d 1273, 1292 (remanding for an award of benefits
27   when the ALJ improperly rejected the physicians' opinions, plaintiff's
     own symptom testimony, and lay witness testimony, and it was clear that
28   a finding of disability was required after properly crediting this
     evidence as true).

further proceedings is appropriate if enhancement of the record would be useful); <u>McAllister v. Sullivan</u>, 888 F.2d 599, 603 (9th Cir. 1989) (remand appropriate to remedy defects in the record).  On remand, the ALJ must correct the above-mentioned deficiencies and errors and further develop the record as appropriate.

**CONCLUSION**

Accordingly, for the reasons stated above, IT IS ORDERED that the decision of the Commissioner is REVERSED, and this case is REMANDED for further proceedings consistent with this Memorandum Opinion and Order.

IT IS FURTHER ORDERED that the Clerk of the Court shall serve copies of this Memorandum Opinion and Order and the Judgment on counsel for plaintiff and for defendant.

**LET JUDGMENT BE ENTERED ACCORDINGLY.**

DATED:  November 17, 2011

_____
MARGARET A. NAGLE
UNITED STATES MAGISTRATE JUDGE